

MR
FILED
5/29/2025
R.M
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# Civil Rights Consortium

May 27, 2025

**BY OVERNIGHT EXPRESS MAIL/ECF**
Hon Clerk of the Court
United States District Court
Northern District of Illinois
219 South Dearborn Street
Chicago, IL 60604

RE: **Marsh *vs.* City of Chicago,**
    **23-cv-06104(JLA)**

Dear Clerk of the Court,

Please find enclosed the Plaintiff's reply papers in further support of their motion to further amend the complaint. As noted in my April 16, 2025, letter to the court, I am unable to log in because I inadvertently deleted my *pro hac* password and security questions. It appears that I need to make an application to District Judge Alonso for purposes of the Court allowing me to delete, and re-establish my *pro hac* credentials, anew in this case. I will do so for purposes of an Order to the Clerk of the Court to allow for such, which will allow my continued ECF filing in the event the Court grants the Plaintiffs' application to file the underlying amended complaint.

However, in the meantime I am attaching the reply papers that are required to be into the Court by May 28, 2025.

Respectfully Submitted,

E. Dubois Raynor, Jr., Esq.

**BY OVERNIGHT EXPRESS MAIL/ECF/EMAIL**

Bradley G. Wilson, Esq. (bradley.wilson@cityofchicago.org)
Attorneys for the Defendants

Danielle Le Roy, Esq. (danielle@dts-tech.com)
Local Counsel for Service for Plaintiffs

# Civil Rights Consortium

May 27, 2025

**BY OVERNIGHT EXPRESS MAIL/ECF**

Hon Jorge L. Alonso, U.S.D.J.
United States District Court
Northern District of Illinois
219 South Dearborn Street
Chicago, IL 60604

      RE: **Marsh *vs.* City of Chicago,**
          **23-cv-06104(JLA)**

Dear Judge Alonso,

Please find enclosed the Plaintiff's reply papers in further support of their motion to further amend the complaint. As noted in my April 16, 2025, letter to the court, I am unable to log in because I inadvertently deleted my *pro hac* password and security questions. It appears that I need to make an application to Your Honor for purposes of the Court allowing me to delete, and re-establish my *pro hac* credentials, anew in this case. I will do so for purposes of an Order to the Clerk of the Court to allow for such, which will allow my continued ECF filing in the event the Court grants the Plaintiffs' application to file the underlying amended complaint.

However, in the meantime I am attaching the reply papers that are required to be into the Court by May 28, 2025. I have overnight express mailed the same to the Attention of the Clerk of the Court for ECF filing, along with courtesy copies to Your Honor, also express mailed into the Court. To ensure that the Defendants are not prejudiced, I have overnight expressed mailed the same to Defense Counsel.

Respectfully Submitted,

*E. Dubois Raynor, Jr.*

E. Dubois Raynor, Jr., Esq.

89-07 JAMAICA AVENUE, WOODHAVEN, NY 11421
T (855) 246-2776 (MAIN) * (347) 508-3497 (DIRECT)
WWW.CIVILRIGHTSCONSORTIUM.COM

**BY OVERNIGHT EXPRESS MAIL/ECF/EMAIL**

Bradley G. Wilson, Esq. (bradley.wilson@cityofchicago.org)
Attorneys for the Defendants

Danielle Le Roy, Esq. (danielle@dts-tech.com)
Local Counsel for Service for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| LEROY SINGLETON, *et al.*, | ) | Civil Action No.: 23-06104 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -against- | ) | |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

PETITONER'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
·PLANTIFFS' MOTION TO AMEND

Dated: May 26, 2025
Woodhaven, New York

Counsel for the
Plaintiff: Leroy Singleton et al.

CIVIL RIGHTS CONSORTIUM
89-07 Jamaica Avenue
Woodhaven, New York 11421
(855) 246-2776 Ext. 702 Telephone

## PRELIMINARY STATEMENT

The Defendants offer two bases for their opposition: (1) *res judicata*, and (2) undue delay in moving to provide additional facts to the Court following *Notre Dame Affordable Housing, Inc. et al. v. City of Chicago, et al, Civil Action No. 18-8116 (N.D. Ill.)* (hereinafter referred to as "Notre Dame Housing Affordable Housing Individual Action"). The Court must reject such bases because (a) there is no identity of parties, as a matter of law, (b) the Doctrine of Constitutional Equities prohibits the application of the doctrine of *res judicata.*, and (c) the Doctrine of Indivisibility prohibits the application of the doctrine of *res judicata* as to the Third Amended Complaint.

## ARGUMENT

### POINT ONE

**WHEREAS HERE, THE THIRD AMENDED COMPLAINT IS A CLASS ACTION UNLIKE THE NOTRE DAME HOUSING AFFORDABLE HOUSING INDIVIDUAL ACTION, AND THE PLAINTIFF LEROY SINGLETON, IS A CLASS MEMBER AND WAS NEVER A PARTY TO THE NOTRE DAME HOUSING AFFORDABLE HOUSING INDIVIDUAL ACTION, THE COURT SHOULD GRANT THE PLAINTIFFS' APPLICATION TO FILE THE THIRD AMENDED COMPLAINT, AND ORDER THE DEFENDANTS TO ANSWER THE THIRD AMENDED COMPLAINT.**

The Doctrine of *Res Judicata* is inapplicable, as a matter of law, to the Plaintiffs' third amended complaint ("TAC").

Under the Doctrine of *Res Judicata* (hereinafter also referred to as "the Doctrine"), a final judgment on the merits bars further claims by parties or their privities based on the same cause of action. *World Church of Creator v. Te-Ta-Ma Foundation-Family of URL, Inc., 239 F.Supp.2d 846, 847-48 (C.D. Ill. 2003)*. For barring purposes, one who asserts the Doctrine must establish three elements: (i) identity of parties or their privities, (ii) an identity of the causes of action, and (iii) a final judgment on the merits. *Id.*

"Privity is a descriptive term for designating those with a sufficiently close identity of interests." *Central States, Southeast and Southwest Areas Pension Fund v. D Investments, Inc., 2002 WL 1759938, *4 (N.D. Ill, Jul. 30, 2002). Matter of L&S Industries, Inc., 989 F.2d 929, 932-33 (7th Cir. 1993). "Privity requires a functional analysis concerned with assuring each litigant his or her own day in court." Central States, Southeast and Southwest Areas Pension Fund, 2002 WL 1759938, at *4; Tice v. American Airlines, Inc. 162 F.3d 966, 971 (7th Cir. 1988).* The appropriateness of preclusion turns on how closely the two sets of interests coincide and the role the absentees played in the prior litigation. *Id.*

3

Therefore, as a matter of law, both the injury and defenses must be identical to both the plaintiff and its privity. *Id.* Moreover, there must be some indication that (a) the privity was (i) aware that the first litigation was going on, (ii) that that litigation would resolve the claims of the privity, (iii) that the privity participated or *had a legal duty* to participate in the underlying prior action, and (b) the first litigation satisfied the privity's due process rights. *Id.*

Furthermore, for purposes of identity of causes of action, the Seventh Circuit uses the "same transaction" test, for purposes of determining the scope of a cause of action. *Car Carriers, Inc. v. Ford Motor Co., 789 F.Supp.2d 589, 593 (7th Cir. 1986).* Under the same transaction test, a "cause of action" consists of a single core of operative facts which give rise to the same remedy. *World Church of Creator, 239 F.Supp.2d at 848; Car Carriers, Inc., 789 F.2d at 593; Alexander v. Chicago Park District, 773 F.2d 850, 854 (7th Cir. 1985).* The same transaction test is intensely fact specific. *World Church of Creator, 239 F.Supp.2d at 848; Car Carriers, Inc., 789 F.2d at 593.*

Therefore, the injury suffered, as well as the possible remedy, must be the same in both the prior and subsequent litigation. *Id. In the instant case*, on the record, currently before the Court, the Defendants can only establish the final element of the Doctrine, that the circuit court's decision in *Notre Dame Affordable Hous., Inc. v. City of Chicago, 838 F.App'x 188 (7th Cir. 2020)*, was a final decision on the merits, as a matter of law. However, the Defendants are unable to establish the first and second elements of the Doctrine.

There is no evidence in the record, of any kind, indicating that the Plaintiff Leroy Singleton was aware of the prior litigation. Similarly, assuming *arguendo*, there is no evidence in the record before the Court indicating that Mr. Singleton was aware that the prior litigation would foreclose could resolve any claims of injury he possessed. Moreover, there is no evidence

4

in the record before the Court that Mr. Singleton participated in the prior litigation or had a legal duty to do so. Furthermore, as a matter of law, it cannot be said that the prior litigation satisfied Mr. Singleton's due process rights.

Therefore, as a matter of law, Mr. Singleton was not a privity of the Plaintiffs in the prior litigation.

Additionally, there is no identity of causes of action. Under the single core of operative facts, the core operative facts that resulted in injury to Mr. Singleton and Notre Dame Affordable Housing ("NDAH"), is different. As Class Members they share commonality of claims and the remedy available. However, the underlying facts resulting in their respective injury are different. That fact undermines the Defendants' claims that there is nothing new in the TAC. What is new in the TAC is that for the first time, the Court is reviewing the claims premised squarely upon the complete underlying title and not, parts thereof, in which the Defendants contend that Mr. Singleton never owned the property.

For, the basis of Mr. Singleton's claims of ownership and rights to transfer the underlying property began and continued through the Plaintiff NDAH's claims of ownership and rights of transfer. According to the Defendants, Mr. Singleton had no such rights. That claim, separate and apart from the Defendants' claims as to NDAH, are distinct and encompass Mr. Singletons protected rights to do so under *42 U.S.C. § 1981, 42 U.S.C. § 1982*, and *42 U.S.C. § 1983*. The Trust, which attaches the deed is clear, when the trust expired, which it did decades ago, the underlying property reverted to fee simple ownership with survivorship rights to Mr. Singleton and his three brothers. While the Defendants have long contended otherwise, what is different here is that this Court, unlike the prior courts, is in possession of the Trust, and the Plaintiff before the Court is Mr. Singleton.

5

Given those circumstances, what becomes glaringly evident is that absence of due process to Mr. Singleton were the court to deny Mr. Singleton his day in court, where the Court's determinations in *Notre Dame Affordable Hous., Inc. v. City of Chicago, 838 F.App'x 188,* would mean only that the transfer of the underlying property from NDAH is void, as the issue that remains undecided, is that which is in dispute between the Defendants and Mr. Singleton is not, as a matter of law, privity as to the prior litigation.

Therefore, the Court should grant the Plaintiffs' application to file the Third Amended Complaint.

## POINT TWO

**WHEREAS HERE, THE THIRD AMENDED COMPLAINT IS A CLASS ACTION UNLIKE THE NOTRE DAME HOUSING AFFORDABLE HOUSING INDIVIDUAL ACTION, AND THE PLAINTIFF LEROY SINGLETON, IS A CLASS MEMBER AND WAS NEVER A PARTY TO THE NOTRE DAME HOUSING AFFORDABLE HOUSING INDIVIDUAL ACTION, THE COURT SHOULD ACCEPT THE AMENDMENT AND ORDER THE DEFENDANTS TO ANSWER THE COMPLAINT.**

The Doctrine of Constitutional Equities would bar the application of the Doctrine of *Res Judicata* in instant case.

The Constitutional Equities Doctrine bars the application of the Doctrine of *Res Judicata* where the result would be a miscarriage of justice. *Kelly v. Johnson, 2020 WL 3097510, **10-12 (D.N.J., June 11, 2020); Cannonsburg General Hospital v. Burwell et al., 807 F.3d 295, **306-07 (D.C. Cir. 2015). (See Cannonsburg General Hospital,* holding that the Doctrine of *Res Judicata* is inapplicable where a miscarriage of justice will occur and where there is no clear evidence of incentive of the party against whom the bar will be applied, to participate in the prior litigation.) *In the instant case,* the Defendants seek to use the Doctrine to bar Mr. Singleton from making claims where he was not party to the prior underlying litigation, and there is absolutely no evidence of his being in privy with the plaintiffs therein.

6

Moreover, given the fact that pursuant to Paragraph H of the Trust (*See Reply Ex. 1*), the property passes to the beneficiaries in fee simple ownership, with survivorship rights, upon the absence of any Trustee, the underlying trust, the Doctrine of Constitutional Equities prohibits application of the Doctrine of *Res Judicata*.[1]

Therefore, the Court should grant the Plaintiff's application to file a third amended complaint.

## POINT THREE

**WHEREAS HERE, THE THIRD AMENDED COMPLAINT SEEKS CLASS ACTION, UNLIKE THE NOTRE DAME HOUSING AFFORDABLE HOUSING INDIVIDUAL ACTION, THE DOCTRINE OF INDIVISABILITY BARS THE EXCLUSION OF PLAINTIFFS WHO LITIGATED THE NOTRE DAME HOUSING AFFORDABLE HOUSING INDIVIDUAL ACTION.**

The Doctrine of Indivisibility bars application of the Doctrine of *Res Judicate*, using the circuit court's determination in *Notre Dame Affordable Hous., Inc. v. City of Chicago, 838 F.App'x 188 (7th Cir. 2020)*, to deny class relief set out in the Third Amended Complaint, even where the Plaintiff Notre Dame Affordable Housing is eligible for class relief.

As a matter of law, class action relief is available if the party opposing the class has acted or refused to act on grounds that apply generally to the class, such that, final injunctive relief is appropriate respecting the class, as a whole. *Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 362-63 (2011)*; *DDMB, Inc. v. Visa, Inc., 2021 WL 6221326, *42 (E.D.N.Y., Sept. 27, 2021)*; *Sykes v. Mel S. Harris & Assocs., LLC, 780 F.3d 70, 80 (2d Cir. 2015)*; *In re Kind LLC "Healthy & All Nat." Litig., 337 F.R.D. 581, 609 (S.D.N.Y. 2021)*; *Fed.R.Civ.P. 23(b)(2)*. (*See Amara v. Cigna*

---

[1] The Plaintiffs' proposed amended complaint would be amended to reflect that the underlying property transferred to fee simple ownership upon the absence of the Trustee, LaSalle National Bank ("LNB"). Therefore, the question isn't whether Mr. Singleton became a fee simple owner of the property but when, as LNB ceased existing on two (2) different occasions: (1) As early as 1979 when LNB was acquired by Algemene Bank Nederland; or (2) at the latest in 2007 when the 1999 LNB successor was acquired by Bank of America.

*Corp.*, 775 F.3d 510, 522 (2d Cir. 2014), citing *Wal-Mart Stores* for the proposition in action

seeking class relief, a plaintiff who may otherwise be available for class relief, may not be

divided or singled out from the class.) (*See Also* the district court in *Onosamaba-Ohindo v.*

*Searls, 2021 WL 1169193 (W.D.N.Y., Mar. 29, 2021)*, citing *Wal-Mart* as to the doctrine of

indivisibility, "the key to the (b)(2) class is the indivisible nature of the injunctive or declaratory

remedy warranted—the notion that the conduct is such that it can be enjoined or declared

unlawful only as to all the class member or as to none of them.

 *In the instant case*, as a matter of law, whereas here the Defendants have focused

exclusively and entirely upon *Notre Dame Affordable Hous., Inc. v. City of Chicago, 838*

*F.App'x 188 (7th Cir. 2020)*, and the Doctrine of *Res Judicata*, the Defendants have conceded the

availability class relief to the Plaintiffs. (*See New York Marine & General Ins. Co. v. Peters,*

*2022 WL 1104741 (S.D. Cal., Apr. 13, 2022)*, holding in pertinent part that a party's failure to

oppose a central issue is, as a matter of law, tantamount to conceding the central issue; *And* the

district court in *Golomb v. Indiana Univ. Health Care Assocs., Inc., 2020 WL 6946467 (S.D.*

*Ind., Nov. 24, 2020)*, citing the circuit court of appeals decision in *Bonte v. U.S. Bank, N.A., 624*

*F.3d 461, 466 (7th Cir. 2010)*, holding that a party's failure to oppose a material issue before the

court constitutes a concession and waiver, because such silence must be concluded to be a

concession.)

 The Plaintiffs proceed as a class seeking injunctive and declaratory relief for the

Defendants' historic deprivation of minority citizens of the City of Chicago, of which the

Plaintiffs are eligible members. The central issue of class relief is wholly unaddressed in the

Defendants' opposition. In fact, the Defendants' opposition is silent as to class relief, leaving this

Court to, as a matter of relief, conclude that the Defendants have conceded the availability of class relief to the Plaintiffs.

Therefore, the Court must decide that the Plaintiffs' application to file the Third Amended Complaint is granted, and the Defendants must answer that complaint.

## <u>CONCLUSION</u>

The Plaintiffs will rely upon the foregoing for his conclusion.

E. Dubois Raynor, Jr.
E. Dubois Raynor, Jr.

REPLY EX. 1

**This Trust Agreement**, dated this 26th day of December

19.72, and known as Trust Number ..45203..... is to certify that LA SALLE NATIONAL BANK, a national banking association, of Chicago, Illinois, as trustee hereunder, is about to take title to the following described real estate in ......COOK.....................County, Illinois, to-wit:

Lots 22 and 23 in Block 1 in Chester Highlands addition to Auburn Park, a subdivision of the East 7/8 of the North 1/2 of the North East 1/4 of the North East 1/4 of Section 32 Township 38 North Range 14 East of the Third Principal Meridian in Cook County, Illinois

and that when it has taken the title thereto, or to any other real estate deeded to and accepted by it as trustee hereunder, it will hold it for the uses and purposes and upon the trusts herein set forth. The following named persons shall be entitled to the earnings, avails and proceeds of said real estate according to the respective interests herein set forth, to-wit:

James Singleton, LeRoy Singleton and Leonard Singleton
as Joint Tenants with Right of Survivorship and not as
Tenants in Common

IT IS UNDERSTOOD AND AGREED between the parties hereto, and by any person or persons who may become entitled to any interest under this trust:

(A) That the interest of any beneficiary hereunder shall consist solely of a power of direction to deal with the title to said property and to manage and control said property as hereinafter provided, and the right to receive the proceeds from rentals and from mortgages, sales or other disposition of said premises, and that such right in the avails of said property shall be deemed to be personal property, and may be assigned and transferred as such; that in case of the death of any beneficiary hereunder during the existence of this trust, his or her right and interest hereunder shall, except as herein otherwise specifically provided, pass to his or her executor or administrator, and not to his or her heirs at law; and that no beneficiary now has, and that no beneficiary hereunder at any time shall have any right, title or interest in or to any portion of said real estate as such, either legal or equitable, but only an interest in the earnings, avails and proceeds as aforesaid. The death of any beneficiary hereunder shall not terminate the trust nor in any manner affect the powers of the trustee hereunder. No assignment of any beneficial interest hereunder shall be binding on the trustee until the original or a duplicate of the assignment is lodged with and accepted in writing by the trustee, and every assignment of any beneficial interest hereunder, the original or duplicate of which shall not have been lodged with and accepted by the trustee, shall be void as to all subsequent assignees or purchasers without notice.

(B) Nothing contained in this agreement shall be construed as imposing any obligation on the trustee to file any income, profit or other tax reports or schedules, it being expressly understood that the beneficiaries from time to time will individually make all such reports, and pay any and all taxes required with respect to the earnings, avails and proceeds of said real estate, or growing out of their interest under this trust agreement.

(C) In case said trustee shall make any advances of money on account of this trust or shall be made a party to any litigation on account of holding title to said real estate or in connection with this trust, or in case said trustee shall be compelled to pay any sum of money on account of this trust, whether on account of breach of contract, injury to person or property, fines or penalties under any law or otherwise, the beneficiaries hereunder do hereby jointly and severally agree that they will on demand pay to the said trustee, with interest thereon at the rate of 7% per annum, all such disbursements or advances or payments made by said trustee, together with its expenses, including reasonable attorney's fees, and that the said trustee shall not be called upon to convey or otherwise deal with said property at any time held hereunder until all of said disbursements, payments, advances and expenses made or incurred by said trustee shall have been fully paid, together with interest thereon as aforesaid. However, nothing herein contained shall be construed as requiring the trustee to advance or pay out any money on account of this trust or to prosecute or defend any legal proceeding involving this trust or any property or interest thereunder unless it shall be furnished with funds sufficient therefor or be satisfactorily indemnified in respect thereto. In case of non-payment of any of said disbursements, advances, or other payments, or upon non-payment of any fees, charges and compensation of the trustee referred to in paragraph (J) hereof, the trustee shall have a first lien therefor on the property held in trust herein, and if said amount is not paid within 60 days after demand, the trustee is hereby authorized and directed, without further notice or advertisement, to sell from time to time at public or private sale and to transfer and convey sufficient of said property to pay such disbursements, advances and payments and such fees, charges and compensation, and after deducting all expenses in connection with such sale, including reasonable compensation for itself and its attorneys, to pay the balance thereof to the beneficiary or beneficiaries hereunder in proportion to their respective interests hereunder. In the event the Trustee is served with process or notice of legal proceedings or of any other matter concerning the trust or the trust property, the sole duty of the Trustee in connection therewith shall be to forward the process or notice by first class mail to the person designated herein as the person to whom inquiries or notices shall be sent or, in the absence of such designation, to the beneficiaries. The last address appearing in the records of the Trustee shall be used for such mailing.

(D) It shall not be the duty of the purchaser of said premises or of any part thereof to see to the application of the purchase money paid therefor; nor shall any one who may deal with the trustee be required or privileged to inquire into the necessity or expediency of any act of said trustee, or of provisions of this instrument.

(E) This trust agreement shall not be placed on record in the Recorder's Office of the county in which the land is situated, or elsewhere, and the recording of the same shall not be considered as notice of the rights of any person hereunder, derogatory to the title or powers of the trustee.

(F) It is understood and agreed by the parties hereto and by any person who may hereafter become a beneficiary hereunder, that said LA SALLE NATIONAL BANK will deal only with said real estate and with any cash or other property or assets of any kind which may come into the possession or control of the trustee only when authorized to do so in writing, and that it will make deeds for or mortgages or trust deeds (including the waiver of the right of redemption from sale under an order or decree of foreclosure), or otherwise deal with the title to said real estate or such other assets or property on the written direction of such person or persons as may be the beneficiary or beneficiaries at the time, or on written direction of

James Singleton, LeRoy Singleton and Leonard Singleton

or such other person or persons as shall be from time to time named in writing by the beneficiary or beneficiaries;

(Over)

⑫

provided that, if any person now or hereafter expressly named as the person (or as one of the persons) having such power of written direction shall be a beneficiary hereunder and shall assign his beneficial interest herein, then no written direction of any such person given subsequent to the filing of such assignment with the trustee shall be recognized without the consent thereto of his assignee; provided, further, that the trustee shall not be obliged to inquire into the propriety of any such written direction; and provided, further, that the trustee shall not be required to deal with the title so long as any money is due to it hereunder, or to enter into any personal obligation or liability in dealing with said land or to make itself liable for any damages, costs, expenses, fines or penalties.

(G) The beneficiary or beneficiaries hereunder in his, her or their own right shall have the management of said property and control of the selling, renting and handling thereof and the keeping, performing and enforcing of all leases and agreements and covenants running with the land, and each beneficiary or his or her agent shall collect and handle his or her share of the rents, earnings, avails and proceeds thereof, and the trustee shall have no duty in respect to such management or control, or the handling or application of such rents, earnings, avails or proceeds or in respect to the keeping, performing or enforcing of any leases, agreements, or covenants running with the land, or in respect to the payment of taxes or assessments or in respect to insurance, litigation or otherwise, except on written direction as hereinabove provided, and after the payment to it of all money necessary to carry out said instructions. No beneficiary hereunder shall have any authority to contract for or in the name of the trustee or to bind the trustee personally. No legal action shall be brought in the name of the Trustee without its prior consent in writing. If any property remains in the trust twenty years from this date it shall be sold at public sale by the trustee on reasonable notice, and the proceeds of the sale shall be divided among those who are entitled thereto under this trust agreement.

(H) The trustee may at any time resign by sending by registered mail a notice of its intention to do so to each of the then beneficiaries hereunder at his or her address last known to the trustee. Such resignation shall become effective ten days after the mailing of such notice by the trustee. In the event of such resignation a successor or successors may be appointed by the person or persons then entitled to direct the trustee in the disposition of the trust property, and the trustee shall thereupon convey the trust property to such successor or successors in trust. If no successor in trust is named as above provided within ten days after the mailing of such notice by the trustee, then the trustee may convey the trust property or any portion thereof to the beneficiaries in accordance with their respective interests hereunder and the beneficiaries for themselves, their legal representatives, executors, administrators and assigns agree that the trustee at its option may deliver deed evidencing such conveyance to the Recorder of Deeds (or Registrar of Titles) in the county or counties in which the real estate is situated for recording and such conveyance shall thereupon be effective and complete, or the trustee may, at its option, file a bill for appropriate relief in any court of competent jurisdiction. The rights, remedies and liens of the trustee provided for in paragraph (C) hereof shall continue notwithstanding the resignation or removal of the trustee or conveyance of any of the trust property.

(I) Every successor trustee or trustees appointed hereunder shall become fully vested with all the estate, properties, rights, powers, trusts, duties and obligations of its, his or their predecessor.

(J) The LA SALLE NATIONAL BANK shall receive for its services in accepting this trust and in taking title hereunder the sum of $..100.00...; also the sum of $....50.00...per year in advance for holding title after the ..26th........day of...December..............19..73 so long as any property remains in this trust; also its regular schedule fees for making deeds; and it shall receive reasonable compensation for any special services which may be rendered by it hereunder, or for taking and holding any other property which may hereafter be deeded to it hereunder, which fees, charges or other compensation, the beneficiaries hereunder jointly and severally agree to pay. In the event the value of the property held hereunder is increased by reason of improvements made thereon after the trustee has accepted title thereto, the trustee shall be entitled to a reasonable additional fee for holding title thereto for each year after the year in which such improvement is made.

IN TESTIMONY WHEREOF, the LA SALLE NATIONAL BANK has caused these presents to be signed by its Assistant Vice-President, and attested by its Assistant Secretary, and has caused its corporate seal to be hereto attached as and for the act and deed of said bank, the day and date above written.

LaSalle National Bank

ATTEST:                                          By:...E.L. Fleming.............
                                                        Assistant Vice-President
....Kenneth Marks.......  FM
   Assistant Secretary

And on said day the said beneficiaries have signed this Declaration of Trust and Trust Agreement in order to signify their assent to the terms hereof.

X..Wineta Singleton.......(SEAL)   Address...1301 West 79th Street, Chicago
...Josephine Singleton....(SEAL)   Address..................................
...Mary Singleton.........(SEAL)   Address..................................
..........................(SEAL)   Address..................................
..........................(SEAL)   Address..................................
..........................(SEAL)   Address..................................
..........................(SEAL)   Address..................................
..........................(SEAL)   Address..................................

May the name of any beneficiary be disclosed to the public?.......No..............................
Refer written inquiries and legal notices by first class mail to....James Singleton..............
May oral inquiries be referred directly?.................To whom?...............................
To whom shall bills be mailed? ......James Singleton, 1301 West 79th Street.......................

R025 CO. 3-72

TRUST AGREEMENT
AND
DECLARATION OF TRUST

**LaSalle National Bank**
135 So. LaSalle Street
Chicago, Illinois 60690

DATED:...............

TRUST NO:............

22 208 415

TRUST NO. _____
VERIFIED WITH
ASSET RECORD _____ Legal

19

## This Indenture Witnesseth, That the Grantor

Thomas E. Woelfle, a bachelor

of the County of ____Cook____ and the State of ____Illinois____ for and in consideration of

Ten (10.00) oo/100--------------------------------------------------Dollars,

Quit-Claims

and other good and valuable consideration in hand paid, Conveys_____ and ~~WARRANTS~~ unto LASALLE NATIONAL

BANK, a national banking association, of 135 South La Salle Street, Chicago, Illinois, its successor or successors as Trustee under the

provisions of a trust agreement dated the ___26th___ day of ___December___ 19__72__ known as Trust Number

___45203___, the following described real estate in the County of ____Cook____ and State of

Illinois, to-wit:

Lots 22 and 23 in Block 1 in Chester Highlands Addition to Auburn Park a
subdivision of the East 7/8 of the North 1/2 of the North East 1/4 of the
North East 1/4 of Section 32 Township 38 North Range 14 East of the Third
Principal Meridian in Cook County, Illinois.



500

Permanent Real Estate Index No._____.

TO HAVE AND TO HOLD the said premises with the appurtenances, upon the trusts and for uses and purposes herein and in said trust agreement set forth.

Full power and authority is hereby granted to said trustee to improve, manage, protect and subdivide said premises or any part thereof, to dedicate parks, streets, highways or alleys and to vacate any subdivision or part thereof, and to resubdivide said property as often as desired, to contract to sell, to grant options to purchase, to sell on any terms, to convey, either with or without consideration, to convey said premises or any part thereof to a successor or successors in trust and to grant to such successor or successors in trust all of the title, estate, powers and authorities vested in said trustee, to donate, to dedicate, to mortgage, pledge or otherwise encumber, said property, or any part thereof, to lease said property, or any part thereof, from time to time, in possession or reversion, by leases to commence in praesenti or in futuro, and upon any terms and for any period or periods of time, not exceeding in the case of any single demise the term of 198 years, and to renew or extend leases upon any terms and for any period or periods of time and to amend, change or modify leases and the terms and provisions thereof at any time or times hereafter, to contract to make leases and to grant options to lease and options to renew leases and options to purchase the whole or any part of the reversion and to contract respecting the manner of fixing the amount of present or future rentals, to partition or to exchange said property, or any part thereof, for other real or personal property, to grant easements or charges of any kind, to release, convey or assign any right, title or interest in or about or easement appurtenant to said premises or any part thereof, and to deal with said property and every part thereof in all other ways and for such other considerations as it would be lawful for any person owning the same to deal with the same, whether similar to or different from the ways above specified, at any time or times hereafter.

In no case shall any party dealing with said trustee in relation to said premises, or to whom said premises or any part thereof shall be conveyed, contracted to be sold, leased or mortgaged by said trustee, be obliged to see to the application of any purchase money, rent, or money borrowed or advanced on said premises, or be obliged to see that the terms of this trust have been complied with, or be obliged to inquire into the necessity or expediency of any act of said trustee, or be obliged or privileged to inquire into any of the terms of said trust agreement; and every deed, trust deed, mortgage, lease or other instrument executed by said trustee in relation to said real estate shall be conclusive evidence in favor of every person relying upon or claiming under any such conveyance, lease or other instrument, (a) that at the time of the delivery thereof the trust created by this Indenture and by said trust agreement was in full force and effect, (b) that such conveyance or other instrument was executed in accordance with the trusts, conditions and limitations contained in this Indenture and in said trust agreement or in some amendment thereof and binding upon all beneficiaries thereunder, (c) that said trustee was duly authorized and empowered to execute and deliver every such deed, trust deed, lease, mortgage or other instrument, and (d) if the conveyance is made to a successor or successors in trust, that such successor or successors in trust have been properly appointed and are fully vested with all the title, estate, rights, powers, authorities, duties and obligations of its, his or their predecessor in trust.

The interest of each and every beneficiary hereunder and of all persons claiming under them or any of them shall be only in the earnings, avails and proceeds arising from the sale or other disposition of said real estate, and such interest is hereby declared to be personal property, and no beneficiary hereunder shall have any title or interest, legal or equitable, in or to said real estate as such, but only an interest in the earnings, avails and proceeds thereof as aforesaid.

If the title to any of the above lands is now or hereafter registered, the Registrar of Titles is hereby directed not to register or note in the certificate of title or duplicate thereof, or memorial, the words "in trust" or "upon condition," or "with limitations," or words of similar import, in accordance with the statute in such cases made and provided.

And the said grantor__ hereby expressly waive__ and release__ any and all right or benefit under and by virtue of any and all statutes of the State of Illinois, providing for the exemption of homesteads from sale on execution or otherwise.

In Witness Whereof, the grantor__ aforesaid ha__ hereunto set ____his____ hand__ and seal _____ this

___26th___ day of ___December___, 19__72__.

(SEAL)_____

5a _____ Thomas E. Woelfle _____ (SEAL)

NO TAXABLE CONSIDERATION

22 208 415



STATE OF___Illinois___

COUNTY OF__Cook__  SS.  I,___Cheryl A. Loszach_____ a

Notary Public in and for said County, in the State aforesaid, do hereby certify that

**Thomas E. Woelfle, a bachelor**

personally known to me to be the same person _____ whose name _____

subscribed to the foregoing instrument, appeared before me this day in person and acknowledged

that ___he_____ signed, sealed and delivered the said instrument as

__s_____ free and voluntary act, for the uses and purposes therein set forth, including

the release and waiver of the right of homestead.

GIVEN under my hand __and Notarial_____ seal this

__31st____ day of __January___

*Cheryl A. Loszach* (signature)

MY COMMISSION EXPIRES AUGUST

COOK COUNTY, ILLINOIS
FILED FOR RECORD

FEB 2 '73 12 16 PM

RECORDER OF DEEDS

22208415

**BOX 350**

**Deed in Trust**
WARRANTY DEED

ADDRESS OF PROPERTY

TO

**LaSalle National Bank**
TRUSTEE

8027CG

# REPLY EX. 2



**WIKIPEDIA**
The Free Encyclopedia

# LaSalle Bank

**LaSalle Bank** Corporation was the holding company for LaSalle Bank N.A. and LaSalle Bank Midwest N.A. (formerly Standard Federal Bank). With US$116 billion in assets, it was headquartered at 135 South LaSalle Street in Chicago,[1] Illinois. LaSalle Bank Corporation was formerly an indirect subsidiary of Netherlands-based ABN AMRO Bank N.V., one of the world's largest banks, with total assets of EUR 986 billion, more than 3,000 locations in over 60 countries and a staff of more than 105,000. Bank of America acquired LaSalle Bank Corp. effective October 1, 2007, and officially adopted the Bank of America name on May 5, 2008.

## Corporate Profile

### LaSalle Bank N.A.

Founded in 1927 as National Builders Bank of Chicago, it changed its name to LaSalle National Bank in 1940 after a team led by John Nuveen acquired control.[2] In the 1960s LaSalle acquired the Mutual National Bank of Chicago founded by Frank C. Rathje. Algemene Bank Nederland (ABN) acquired the bank in 1979. In a merger of co-owned banks, the LaSalle Bank N.A. name

**LaSalle Bank N.A.**



| | |
|---|---|
| **Industry** | Financial Services |
| **Founded** | 1927 |
| **Defunct** | 2008 |
| **Fate** | Acquired by Bank of America |
| **Successor** | Bank of America N.A. |
| **Headquarters** | Chicago, Illinois, United States |
| **Products** | Middle-Market Commercial Lending, |
| | Middle-Market Commercial Real Estate Lending, Domestic and International Cash Management Commercial Banking, Wealth Management, Retail Banking, |
| | Trust and Treasury |
| **Parent** | Bank of America (current) ABN AMRO (former) |

was adopted in 1999. It was the largest bank headquartered in Chicago with US$72.2 billion in assets and US$46.8 billion in deposits. LaSalle Bank maintained 146 retail locations and 450 ATMs throughout Chicago and its neighboring suburbs.

LaSalle Bank maintained regional offices in Atlanta, Boca Raton, Boston, Cincinnati, Cleveland, Columbus, Connecticut, Dallas, Denver, Des Moines, Houston, Indianapolis, Kansas City, Los Angeles, Miami, Milwaukee, Minneapolis, Nashville, New Jersey, New York City, Omaha, Philadelphia, Pittsburgh, San Francisco, St. Louis, Tampa, Troy, Tustin, and Washington, D.C. Subsidiaries included LaSalle National Leasing Corporation, LaSalle Business Credit, LLC, LaSalle Financial Services Inc, LaSalle ABN Capital Markets LLC, AMO Capital Markets, AMO Commercial Holdings LLC, ABN Commercial Real Estate Holdings LLC. Upon the acquisition Nova Global Markets and Nova Holdings became a part of the official records.

John Rau served as CEO of LaSalle Bank from 1989 to 1991, staying on ABN's North America board until it sold LaSalle to Bank of America in 2007.[3]

## LaSalle Bank Midwest N.A.

In 1996, ABN AMRO acquired Troy, Michigan-based Standard Federal Bancorporation, the largest savings bank in the Midwest. In 2000, ABN AMRO acquired Michigan National Corporation of Bloomfield Hills and merged it into Standard Federal. The merged bank took the Standard Federal name, but operated under Michigan National's charter. In 2005, it changed its name to *LaSalle Bank Midwest N.A.* when ABN AMRO consolidated its U.S. commercial banking operations under the LaSalle name.

As of 2007, it was one of the largest banks in the Midwest, with US$43 billion in assets and US$24.1 billion in deposits. It operated 264 branches and 1,000 ATMs in Michigan and Indiana.

## Sale to Bank of America

On April 23, 2007, an agreement was made to sell LaSalle Bank Corporation to Bank of America for US$21 billion.[4] Bank of America officially took over LaSalle on October 1, 2007.[5] This was a defensive move by ABN AMRO to stave off its own purchase by a consortium led by Royal Bank of Scotland. RBS wanted to merge LaSalle with its Citizens Financial Group division. At one stroke, this made Bank of America the largest bank by deposits in both Chicago and Detroit; Bank of America previously had a minimal presence in Chicago and none at all in Michigan. The investment banking arm was purchased by the third largest bank in Canada by deposits and market capitalization.

Strong connections exist to the Chicago-based PrivateBank as a swath of bankers moved to establish that bank in the mold of the original LaSalle Bank and to avoid the big bank takeover. PrivateBank was later sold to the US division of Canadian Imperial Bank of Commerce (CIBC). [6][7]

# Sponsorships

LaSalle sponsored a number of events in its Chicago home. Many of these events will now be re-branded with Bank of America's name.

- LaSalle Bank Open a Nationwide Tour golf tournament
- The Chicago Marathon
- The Chicago White Sox
- The International Music Foundation (http://www.imfchicago.org) Dame Myra Hess Memorial Concert
- The Navy Pier Winter WonderFest
- The Shamrock Shuffle (http://www.shamrockshuffle.com) the largest 8 km race in the world
- Handel's "Do-it-yourself" Messiah (https://web.archive.org/web/20100307212344/http://www.imfchicago.org/diymain.html)
- Army Reserve Jobs (https://web.archive.org/web/20130524155213/http://www.armyreservejobs.org/goarmy/army-reserve-jobs/)

# References

1. "In brief: LaSalle Bank Building, American Apparel" (http://www.chicagobusiness.com/apps/pbcs.dl

l/article?AID=9999200030735). *Crain's Chicago Business*. August 26, 2008. Retrieved May 7, 2015.

2. "Builders Bank Changes Hands; Will Move Site" (http://archives.chicagotribun e.com/1940/03/16/page/27/article/builders-bank-changes-hands-will-move-sit e). *Chicago Tribune*. March 16, 1940. Archived (https://web.archive.org/web/2 0150518183236/http://archives.chicagotribune.com/1940/03/16/page/27/articl e/builders-bank-changes-hands-will-move-site/) from the original on May 18, 2015. Retrieved May 7, 2015.

3. "John Rau Was A Successful CEO Four Times And Now Advises Leaders | Investor's Business Daily" (https://web.archive.org/web/20241117054621/http s://www.investors.com/news/management/leaders-and-success/john-rau-was -a-successful-ceo-four-times-and-now-advises-leaders/). November 17, 2024. Archived from the original (https://www.investors.com/news/management/lead ers-and-success/john-rau-was-a-successful-ceo-four-times-and-now-advises-l eaders/) on November 17, 2024. Retrieved March 13, 2025.

4. "ABN AMRO announces USD 21 billion sale of LaSalle to Bank of America" (h ttps://web.archive.org/web/20070715074353/http://www.abnamro.com/pressr oom/releases/2007/2007-04-23-en-l.jsp). *www.abnamro.com*. Archived from the original (http://www.abnamro.com/pressroom/releases/2007/2007-04-23-e n-l.jsp) on July 15, 2007.

5. "Bank of America | Newsroom - Press Releases" (https://web.archive.org/we b/20071013085717/http://bankofamerica.mediaroom.com/index.php?s=press _releases). Archived from the original (http://bankofamerica.mediaroom.com/i ndex.php?s=press_releases&item=7885) on October 13, 2007.

6. Switzky, Bryant Ruiz (February 17, 2008). "Former LaSalle lenders open Private Bank" (https://www.bizjournals.com/twincities/stories/2008/02/18/story 3.html). Archived (https://web.archive.org/web/20080908040552/http://www.bi zjournals.com/twincities/stories/2008/02/18/story3.html) from the original on September 8, 2008. Retrieved August 14, 2023.

7. Reynolds, Bob (October 23, 2007). "Twelve Former LaSalle Directors Join the Private Bank-Chicago" (https://www.wealthbriefingasia.com/article.php?id=96 61). *WealthBriefingAsia*. ClearView Financial Media. Archived (https://web.arc hive.org/web/20230616145912/https://www.wealthbriefingasia.com/article.ph p?id=9661) from the original on June 16, 2023. Retrieved August 14, 2023.

**�‡ Banks portal**

Retrieved from "https://en.wikipedia.org/w/index.php?title=LaSalle_Bank&oldid=1281509484"

Consortium

wood Ave

, NJ 07040

6-2776

RECEIVED

MAY 29 2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**To:** Clerk of the Court

U.S. District Court for th Northern Dist. of ILL

Everett McKinley Dirksen U.S. Courthouse, 219 south

Chicago, IL 60604

